HARRISON CROSBY *versus* JONATHAN B. BESSEY *& al.*

Where a tanner has thrown his ground bark into a stream for more than twenty years, he does not thereby acquire a right by prescription to do so, to the injury of the owner of land on the same stream below, on which the natural action of the water deposits the bark, unless it appears that the bark has been deposited on the same land, and the owner thereof annually injured thereby, for the whole term of twenty years.

Although the tanner and those under whom he claims have thrown their ground bark into the stream for more than twenty years, yet if the owner of the land below has not been thereby annually damaged until within the last six years, this is not sufficient to establish a right by prescription; and the owner of the land injured may maintain an action for damages.

Although the land below has only been injured by the deposit of bark, since the removal of a dam above and the formation of one below, without the agency of either of the parties, yet, *it seems*, the tanner is responsible for the damages to the land occasioned by the deposit after those changes took place.

ACTION OF THE CASE against the defendant for throwing ground bark from his tannery, in Albion, into the stream on which the tannery is situated, which bark, it is alleged, was carried down by the stream, and deposited on the plaintiff's land below, to the damage of the plaintiff. Plea, the general issue, with a brief statement, claiming a right in the defendant to throw bark from his tannery into the stream, and denying that he had committed any unlawful act.

MAY, J., presiding, instructed the jury that, if the defendant had the right to throw bark ground by him into the stream, and did so at a reasonable time and in a reasonable manner, although it might be deposited by the water on the plaintiff's land, and he be injured thereby, the action could not be maintained; but, if he had no right so to use the stream, and did so use it, he would be liable for the natural and direct consequences thereof.

He further instructed them, that the right to subject the plaintiff's land to such annual deposits of ground bark might undoubtedly be acquired by prescription; but that the defendant, in order to establish such a right, must satisfy them that he, and those under whom he claimed, had so used the

stream for twenty years before the commencement of this suit, and that damage to the plaintiff's land had annually been done thereby.

He further instructed them, at the plaintiff's request, that, unless the defendant, or those under whom he claimed, had acquired by grant or prescription the right to deposit his ground bark in the stream, he had no right so to deposit it, as that, by the natural action of the water, it would be carried on to the plaintiff's land below, to his damage ; and if he did thus deposit it, without having acquired such right, and it was carried on to the plaintiff's land to his damage, the plaintiff was entitled to recover in this action.

The defendant's counsel requested the Judge to instruct the jury, that if the defendant, and those under whom he claimed, had, for more than twenty consecutive years prior to the commencement of this action, used the stream for floating the bark away from their tannery, they had acquired the right so to use it, to the same extent to which it had been so used, and that this action could not be maintained.

2. That if the defendant, and those under whom he claimed, had, for twenty consecutive years, thrown the bark from their tannery into the stream, they thereby acquired a right so to put it in, to the same extent, and the plaintiff, whose land is below, must take the stream, subject to such adverse right.

3. That if, by any change in the course or condition of said stream, not caused or occasioned by any act of the plaintiff, or those under whom he claimed, the quantity of bark, by said stream deposited upon the plaintiff's land, is increased, the defendant is not liable therefor, provided he deposited no more bark in the stream than he had been accustomed to do for more than twenty years prior to the commencement of this action.

4. That if, by reason of the plaintiff's land having been recently cleared up and improved, the damage done by the bark is greater than was occasioned thereby prior to such clearing and improvement, the defendant is not liable, un-

less he deposited in said stream a greater quantity of bark than had been deposited therein yearly for twenty consecutive years, by those under whom he claimed, or had used the stream in a manner different from that in which it had been used by them during that time.

5. That if any bark had, every year for more than twenty years prior to any complaint made, been carried and left by said stream upon the plaintiff's land, some damage was to be presumed to have been done thereby.

6. That if the defendant, and those under whom he claims, had, for more than twenty years before any complaint was made by the plaintiff, exclusively enjoyed the stream described in plaintiff's writ, for putting their bark therein and floating it away from their tannery, it afforded a conclusive presumption of his right so to enjoy it.

7. That twenty years exclusive enjoyment of water in any particular manner afforded a conclusive presumption of right in the party so enjoying it.

8. The defendant also requested the Judge to instruct the jury, that if the tan put into the stream as aforesaid, by the occupants of the tannery, has, for more than twenty consecutive years, been carried by the water and deposited in greater or less quantities upon the lot of land now owned by the plaintiff, and described in the writ, the occupants of the tannery would have the right so to deposit the tan in said stream; and if by reason of a dam or the removal of a jam of logs, by other persons, a greater quantity of tan had been thrown upon the plaintiff's land for the last four or five years than formerly, without any agency of said occupants, their right so to deposit the said tan would not be defeated, —which was given by the Judge, with the variation that the words "doing damage annually," were by him inserted after the word "writ."

Each and all of said requested instructions the Judge refused to give, any further than appears from the instructions herein stated to have been given.

There was evidence tending to prove that formerly, for

many years, there was a jam of logs and drift stuff in said stream and against the plaintiff's land, which prevented the bark, to a great extent, from being carried and deposited by the water upon plaintiff's land, and that the jam was burned in the fall of 1855. Also that a dam lower down the stream had been raised within the last six years, so as to back the water upon the plaintiff's land in freshets, and that the bark only came on in freshets.

Several questions were put to the jury in writing by the Judge, to be answered by them with their verdict. Their answers to these questions are stated in the opinion of the Court.

There was also evidence tending to prove that the plaintiff's land, upon which the bark is alleged to be deposited, was cleared up twelve or fourteen years ago.

The verdict was for the plaintiff, and the defendant excepted to the instructions and refusals to instruct.

*Bradbury*, *Morrill & Meserve*, in support of the exceptions. [No minutes of their agument have been received by the Reporter.]

*A. Libbey*, for the plaintiff.

1. The instructions given state the law correctly.

2. The requested instructions not given, were properly refused.

3. If there was error in the instructions given, or in refusing to give those requested, the special findings of the jury, in answer to questions put by the Judge, remove all cause of exception by the defendant, except as to the 1st, 2d, 6th and 7th requests. *Gordon* v. *Wilkins*, 20 Maine, 134; *Dyer* v. *Green*, 23 Maine, 464. These requests were properly refused. They are all based upon the proposition, that the defendant had acquired the right to have his bark deposited on the plaintiff's land by the natural action of the water of the stream, by reason of having thrown it into the stream for more than twenty years, without depositing any part of it on the plaintiff's land. Such acts were not *ad-*

Crosby *v.* Bessey.

verse to the plaintiff's rights, gave him no cause of action, and the defendant acquired no prescriptive rights as against the plaintiff by so doing. *Donnell* ᛏ. *Clark*, 19 Maine, 174.

The opinion of the Court was drawn up by

GOODENOW, J.—This is an action on the case, to recover damages of the defendant, for throwing the ground bark, from his tannery, into the stream upon which said tannery is situated, the same bark being carried by the current down the stream and deposited on the plaintiff's land below, to his injury.

The defendant, by his brief statement, claims a right to throw bark from his tannery into said stream, by prescription.

The verdict was for the plaintiff. And the jury found specially, in answer to questions propounded to them by the Court, that the defendant, and those under whom he claimed, had been accustomed for a period of twenty years successively, before the bringing of the suit, to put or turn the refuse ground bark made at the tannery, now owned and occupied by him, or some part of it, into said stream. And they also found, that the same bark *had not* annually been deposited upon the plaintiff's land below, during the said twenty years; and that such deposits of bark had been made on the plaintiff's land only about six years. The plaintiff could have no right of action until he was injured. There had been no such adverse and long continued occupation of the plaintiff's land by the defendant, as a place of deposit for his bark, as to create a presumption of a grant.

We are not able to perceive any error in the instructions which were given, or any necessity for those which were requested, in addition to those given, and refused.

*Exceptions overruled.—Judgment on the verdict.*

TENNEY, C. J., RICE, MAY, DAVIS and KENT, JJ., concurred.